## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

REGINALD COX,

        Plaintiff,

        v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civil Action No. 19-1112 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

> This matter comes before the Court upon Plaintiff Reginald Cox's ("Plaintiff") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying his request for benefits. (Compl., ECF No. 1.) The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court remands the matter for further analysis.

## I.   BACKGROUND

### A.   Procedural History[1]

> On June 23, 2014, Plaintiff filed an application for Social Security Disability benefits, alleging disability as of June 1, 2014. (AR 352-53.) Plaintiff's application was denied initially and upon reconsideration. (*Id.* at 150-57.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 160-64.) Hearings were conducted on January 19 and August 8, 2017 (*Id.*

---

[1] The Administrative Record ("AR") is located at ECF Nos. 7-1 through 7-15. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

at 47-118), and on September 28, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 23.) Plaintiff sought Appeals Council review, and on November 30, 2018, the Appeals Council concluded that there were no grounds for review. (*Id.* at 1-8.) Plaintiff then filed an appeal to this Court. (*See generally* Compl.) On April 25, 2019, the Court issued a Notice of Call for Dismissal (ECF No. 3), following which Plaintiff filed the executed summons (ECF No. 4). Defendant filed the AR on June 25, 2019. (ECF No. 7.) Plaintiff subsequently requested extensions of time to file his moving brief (ECF Nos. 12, 13), which the Court granted (ECF No. 14). In addition, Defendant requested an extension to file an opposition brief (ECF No. 16), which the Court also granted (ECF No. 17). Plaintiff filed his moving brief on April 3, 2020 (Pl.'s Moving Br., ECF No. 15), and the Commissioner filed opposition on June 17, 2020 (Def.'s Opp'n Br., ECF No. 18).

## B. The ALJ's Decision

On September 28, 2017, the ALJ rendered a decision. (AR 12–23.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 13–14.) The ALJ initially found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (*Id.* at 14.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since his alleged onset date of June 1, 2014. (*Id.*) At step two, the ALJ found that Plaintiff had three severe impairments: "left eye blindness; bilateral knee osteoarthritis; and hypertension." (*Id.*) At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

2

The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC"):

> to perform sedentary work except that after sitting 30 minutes, he may stand/change position at the work station for one to two minutes; he may stand or walk up to 20 minutes at a time before being allowed to sit for two to three minutes; he may occasionally [climb up] ramps or stairs; he may never climb ladders, ropes or scaffolds; he may occasionally stoop; he may never kneel, crouch or crawl; he must avoid all exposure to hazardous machinery, unprotected heights or operational control of moving machinery; he may not drive a vehicle; and may elevate his leg six inches in height every one to two hours for 20 minutes.

(*Id.* at 15) (citation omitted.) At step four, in considering Plaintiff's past relevant work as a Corrections Officer and his aforementioned RFC, the ALJ found that Plaintiff "is unable to perform that past job because it is too physically demanding," and is "unable to perform [his] past relevant work as actually or generally performed." (*Id.* at 21-22.) At step five, in light of Plaintiff's age, education, work experience, and RFC, the ALJ concluded "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," according to 20 CFR 404.1569 and 404.1569(a). (*Id.* at 22.) The ALJ consequently found that Plaintiff was not under a disability from the alleged onset date of June 1, 2014, as defined in the Social Security Act. (*Id.* at 23.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402

3

U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700,706–07 (3d Cir. 1981) (internal citation omitted).

## B.   Establishing Disability

In order to be eligible for disability benefits, a claimant must be unable to "engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a

4

claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that he has not engaged in any SGA since the onset of his alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the first two steps are satisfied, the third step requires the claimant to provide evidence that his impairment is equal to one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If he cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his previous employment. *Id.* The RFC determination is accompanied by an assessment of the applicant's subjective complaints, which must be given "serious consideration." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). If the claimant can perform

5

his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). If the claimant is unable to return to his previous work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(g). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with his medical impairments, age, education, past work experience, and RFC. *Id.*; *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. 20 C.F.R. § 404.1520(g).

## III. DISCUSSION

### A. Parties' Positions

#### 1. Plaintiff

Plaintiff argues that the administrative decision reveals significant medical and testimonial omissions and errors in the evaluation of Plaintiff's RFC, pain, and the weight afforded to evidence from physicians who personally treated Plaintiff versus the non-examining physician testimony on which the ALJ principally relied. (Pl.'s Moving Br. 10.) According to Plaintiff, the ALJ erred by affording greater weight to the non-examining medical expert's opinion in comparison to the records of Plaintiff's treating doctors. (*Id.*) Plaintiff asserts that the ALJ dismissed his repeated complaints of pain to his treating physicians, and that the ALJ's decision lacked specific reasons as to why the ALJ afforded greater weight to contrary evidence. (*Id.* at 13-14.)

Plaintiff asserts that the ALJ wholly adopted the opinions of Dr. Zuckerman, the non-examining expert witness who testified at the administrative hearing, and failed to acknowledge Dr. Zuckerman's inconsistent conclusions. (*Id.* at 16.) Dr. Zuckerman testified that Plaintiff's left eye pressure could not remain high without eventually burning out the organ, yet

6

also testified that high pressure could produce the pain experienced by Plaintiff. (*Id.* at 17-18.) Plaintiff argues that the ALJ wrongly interpreted Dr. Zuckerman's testimony that a medical professional would never allow high pressure and pain to continue without pain-reducing treatment to mean that the pressure and pain could not remain as high as Plaintiff experienced. (*Id.* at 18-25.)

## 2. Defendant

Defendant contends that the ALJ relied on substantial evidence in finding that Plaintiff is not disabled, and that Plaintiff's impairments limit his RFC to a range of sedentary work. (Def.'s Opp'n Br. 10-11.) Defendant highlights that the ALJ's decision was substantiated by discussions of Plaintiff's subjective complaints, opinions of Plaintiff's own treating physicians, a consultative examiner, state agency physicians, and the testimony of a medical expert. Defendant lists several facts from the record relied upon by the ALJ. (*Id.* at 12.) First, the ALJ noted that Plaintiff used pain-relieving eye drops and ointment as needed to address his complaints of occasional and mild pain. (*Id.*) Defendant also identifies the ALJ's references to Plaintiff's treatment records, which repeatedly describe his visual condition in his right eye as stable but indicate that Plaintiff's boxing injury rendered him completely blind in his left eye. (*Id.*) Defendant notes that the ALJ also took into account that Plaintiff drove himself to the hearing, and at least had the physical and mental capacity to sustain a schedule that included washing laundry, driving, and doing light cleaning. (*Id.* at 12, 14.)

Defendant additionally argues that Plaintiff's noncompliance with his treating physician's recommendation to have his left eye surgically removed to eliminate pain is a relevant consideration in the disability analysis. (*Id.* at 12 n.2.) In addition, Defendant argues that the ALJ had the exclusive responsibility to evaluate conflicting medical opinions and assess their consistency with the rest of the record. (*Id.* at 13.) According to Defendant, the opinion of

7

Plaintiff's treating physician that Plaintiff's left eye pain would frequently interfere with his attention or concentration was considered by the ALJ, who properly afforded it little weight because the physician provided no explanation, and the finding was inconsistent with the physician's own treatment records. (*Id.* at 14.) Defendant argues that Plaintiff did not satisfy the heavy burden of proving that the ALJ's decision was so lacking in support that not even a modicum of evidence supports the ALJ's conclusions. (*Id.* at 2.) Defendant, therefore, argues that the ALJ's decision should be affirmed. (*Id.*)

## B.    Analysis

Based on its review of the ALJ's decision, and in light of the specific record in the present case, the Court finds good cause to remand the matter.

In his moving brief, Plaintiff argues that the ALJ's administrative decision reveals significant medical and testimonial omissions, as well as errors in assessing Plaintiff's RFC due to improper weight being given to non-treating physicians versus Plaintiff's treating physicians.[2] (Pl.'s Moving Br. 10.) The Court agrees with Plaintiff.

In evaluating medical evidence, "a . . . treating physician's opinion carries greater weight than that of a non-examining consultant." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time." *Morales*, 225 F.3d at 317

---

[2] The Court declines to analyze all of the arguments raised by the parties. Defendant should not infer from the fact that the Court has not specifically mentioned any particular aspects of the ALJ's decision that the unmentioned aspects of the decision have survived the Court's review. Upon remand, the ALJ should start the analysis at step one and work her way through the sequential factors.

8

(internal quotation marks and citation omitted). A treating source's opinion, however, is entitled to controlling weight only when it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Fargnoli*, 247 F.3d at 43 (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ's decision in the present case was neither sufficiently comprehensive nor clear for the Court to find that the weight the ALJ afforded to treating physicians' findings that Plaintiff was unable to work was supported by substantial evidence. Here, test results indicating that Plaintiff's eye pressure was high and Plaintiff's continuous reports of at least some pain were consistent with Plaintiff's subjective testimony. (AR 65-66; *Id.* at 1300-01.) Moreover, the ALJ's RFC determination appears predicated on Dr. Zuckerman's testimony that Plaintiff's left eye pain could not have been as intense and continuous as Plaintiff testified because Plaintiff "[did] not complain of severe left eye pain to his treating physicians," and because the pain would eventually "burn[] itself out." (*Id.* at 18.) Dr. Zuckerman, however, provided inconsistent testimony.

Dr. Zuckerman testified that the eye pressure Plaintiff experienced would produce the pain and symptoms that Plaintiff experienced:

Q:     Doctor, I just want to clarify . . . what is the normal eye pressure that a person should have?

Dr.:   Normally it's a little less than 20.

Q:     Okay. Now on the eye pressure that the Claimant testified to, his pressure being, at times, in the 40's and as high as 59 --

Dr.:   Correct.

Q:     -- up to 60, would that level of eye pressure produce the pain symptoms that the Claimant expressed?

Dr.:   Yes.

9

(*Id.* at 86.)

In reaching a decision, the ALJ relied on the subsequent hearing exchange with Dr.

Zuckerman:

Q:      Okay. So regardless of your belief that if he had this procedure to
        completely remove his eye, all of his allegations with regard to the
        pain and the effects of the condition that he currently suffers from,
        do you believe it's accurate?

Dr.:    No.

Q:      Why not?

Dr.:    Because you -- that elevated pain is never maintained this length of
        time. Usually when the pressure goes up that high it -- it burns out
        the organs that are producing the pressure and then the pressure
        drops back to normal. So when somebody comes in with a very high
        pressure and then the pressure, if you don't do anything then, you're
        in severe pain, but the pain only lasts -- the pressure only lasts for a
        few days and then the eye reverses itself completely and the pressure
        drops to nothing, and then the eye dies. And that's actually -- and
        this guy goes up and down because if you're treating him and adding
        things on top of the problem when he started off with which was
        detached retina.

(*Id.* at 86-87.)

Here, Dr. Zuckerman recognized the relationship between the eye pressure and the
documented pain Plaintiff experienced. (*Id.* at 86.) Dr. Zuckerman also described what happens to
an eye experiencing high pressure if it is left untreated. (*Id.* at 86-87.) As set forth above, "the
pressure drops to nothing, and then the eye dies." (*Id.*) Dr. Zuckerman, however, then appeared to
distinguish Plaintiff's case by testifying that "[Claimant] goes up and down because . . . you're
treating him and adding things on top of the problem which he started off with[.]" (*Id.* at 86-87.)
Dr. Zuckerman continued his testimony in the following exchange with the ALJ:

ALJ:    So I need you to stay focused, not on whether he is getting
        competent care[.] I need you to stay focused based on your review

10

of the record as to the functional limitations that you believe he could have as a result of the pain that he could have based on the pressures that he has. That's what I want you to stay focused on.

Dr.:    Okay.

ALJ:    Okay.

Dr.:    He could have -- when the pain goes up he could have pain from that. When the pressure goes up he could have pain from the pressures that are being recorded.

ALJ:    For how long? For how long?

Dr.:    For hours and approximately days.

ALJ:    Okay. But you said earlier that you believe that as a result of having the pressure for so long -- let me get my -- let me get your exact words out. If you don't do anything the most the pressure could last is a few days and then it would burn out the organ producing the pressure.

Dr.:    Right.

ALJ:    So can you please tell me -- you know, because I'm getting conflicting opinion[s] from you so you need to stay focused, because that's what I'm focusing on, okay?

Dr.:    Yeah.

ALJ:    Okay. So can you please tell me upon his pressure that he has in the eye, he has -- he has testified that he continues to have severe pain, and his testimony was, at the level of ten out of ten, which basically incapacitates him, so he is having to lay down in bed most of the day, he's not functional, he cannot function. That's what his testimony is. You're the expert and I'm asking you based upon your review of the record to comment on that based upon what you're seeing, okay? Because he -- obviously, if you've reviewed the record, his pressure has been going up. It's not as if the pressure is - - it doesn't go up anymore, it does go up . . . you need to help me out here because I'm not understanding what you're saying.

Dr.:    Okay. Well, I'm trying to put this into a clinical situation --

ALJ:    Okay.

11

Dr.:   -- and the situation is usually this. Patient comes in to see the doctor and the doctor mentions the pressure and he says it's up, and usually the patient says well, you know, it feels okay. That's one situation. Another situation is patient comes in and he says my eye is killing me, you got to do something about it. Well why don't they do anything about it?

ALJ:   Okay, but we're not getting into what they did or didn't do, Doctor. You need to stay focused. This is not a discussion of whether or not a doctor has followed the standard of care, that's not the issue before us today, okay? So I need you to put that aside and stay focused.

. . . .

Just tell me, based on your review of the record what limitations you think this man might have [as] a result of the pressure in his eye, period.

Dr.:   If the pressure stays high continuously[,] he will have pain.

ALJ:   You stated earlier that he wouldn't have pain for more than a few days because the nerve would -- the organ producing the pressure would burn out.

Dr.:   Right.

ALJ:   So now you're saying something different?

Dr.:   No I'm not saying anything different because I've never seen any last that long. I've never seen any last for more than a few days. I can't think of a clinical situation where it would happen.

. . . .

Because my experience is built on what people come in and tell me. And if they come in and tell me that they're in pain I feel it's my obligation to relieve them of the pain.

. . . .

Can you imagine any patient going to a doctor over a period time and being in pain all this time and not getting satisfaction? I can't believe that it -- that it could occur.

. . . .

12

> I've never heard of anybody letting a patient stay in pain for an
> extended period of time.

(*Id.* at 93-98.)

Dr. Zuckerman's testimony attempts to contextualize the quality of Plaintiff's care and explain the symptoms experienced by Plaintiff. The testimony, however, fails to rebut the existence of the pain and pressure experienced by Plaintiff, as documented in treatment records. (*Id.* at 1172, 1300-01, 1312.) Dr. Zuckerman relies principally on personal experience to speculate that a doctor would never allow such pain to continue. Nevertheless, Dr. Zuckerman concedes that the eye pressures experienced by Plaintiff would produce his symptoms. (*Id.* at 93.) Here, the ALJ's decision does not sufficiently reconcile Dr. Zuckerman's inconsistent testimony or adequately explain the weight the ALJ afforded to Dr. Zuckerman's opinion regarding Plaintiff's level of pain. (*Id.* at 18-19.) While the ALJ identified that Plaintiff only reported using pain-relieving ointment "occasionally when he has pain" (*id.* at 19, 746), these reports of pain occurred in 2014, before Plaintiff began reporting higher pressures and pain in June of 2017[3] (*id.* at 1300).

Defendant argues that Plaintiff's non-compliance with recommended left eye removal surgery undermines his claim and that Plaintiff's non-compliance with treatment that could alleviate his symptoms should be considered in the disability determination analysis. (Def.'s Opp'n Br. 12 n.2) (citing *Sutherland v. Comm'r of Soc. Sec.*, 785 F. App'x 921, 929 (3d Cir. 2019) (finding that the ability to control mental illness symptoms with medication, despite claimant's non-compliance, supports conclusion that claimant has the capacity to work).) In *Sutherland*, the

---

[3] Dr. Higgins indicated that Plaintiff's pain and other symptoms would frequently interfere with Plaintiff's attention and concentration. (AR 1105, 1215.) The ALJ afforded Dr. Higgins's opinions "little weight" because "there is no evidence of significant left eye pain that has caused any interference in [Plaintiff's] attention and concentration." (AR 21.) This also requires further elaboration.

13

Third Circuit affirmed the denial of disability benefits to a woman suffering from bipolar disorder. *See generally Sutherland*, 785 F. App'x at 927-29. The ALJ in *Sutherland* discredited the treating physician's findings that the claimant's Global Assessment of Functioning scores indicated that she was disabled, and instead based the claimant's RFC determination on a medical examiner's finding that the claimant was able to work when taking her medication as prescribed. *Id.*

Defendant argues that the Court should adopt *Sutherland*'s reasoning and references a medical record recommending that Plaintiff have his left eye surgically removed. (AR 1069.) This matter, however, is distinguishable from *Sutherland*. First, in *Sutherland*, a treating physician's evidence that the claimant was incapable of work was afforded less weight in part because of a clerical error in the reported results of a psychological exam. *Sutherland*, 785 F. App'x at 929. Second, the non-treating physician in *Sutherland* personally evaluated the claimant, unlike here where the medical expert conducted a file review. *Id.* at 928. Third, mental status examinations confirmed improvement in the patient's condition in *Sutherland*, whereas here the medical records are not as clear.

The ALJ is required to adequately account for medical findings that support a treating physician's opinion that a claimant is disabled. *Morales*, 225 F.3d at 317. Here, the Court does not reweigh the evidence. The Court, however, finds that the ALJ's explanations regarding the weight afforded to Plaintiff's treating physicians were not sufficiently comprehensive in light of the objective medical evidence of Plaintiff's elevated eye pressure and the medical expert's inconsistent testimony.

Notably, access to the Commissioner's reasoning is essential to meaningful Court review:

> [U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative [testimony], to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize

14

> the record as a whole to determine whether the conclusions reached
> are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotation marks omitted). Based

on a careful consideration of the record and pleadings in this matter, the Court finds that remand

is required.

## IV.    CONCLUSION

For the reasons set forth above, this matter is remanded for further proceedings. An Order

consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** May 31, 2021